The next case for argument is 13-1479-01 Communique Laboratory v. Logmein, Inc. May it please the Court, claim construction, except for the claim construction that this after the evidence was in. However, once the trial judge had established at the charging conference that all words other than location facility in the claim would be given their ordinary meaning, judgment as a matter of law should have been granted and the case should not have gone to the jury. Because the defenses that were offered by Logmein in this case turned on interpretations of claim language that were either contrary to what this Court said or were contrary to the plain and ordinary meaning of the claim term. Now when this case was sent back, you all requested a jury trial, right? We did. We did. And I'm sure your Honor is referring back to the point that's made in the red brief that when they moved for summary judgment, we responded that there were facts in dispute and that that was one of the reasons that Judge Hilton should not grant summary judgment against us. It's important to remember the timing of that motion. The motion for summary judgment by Logmein was filed immediately after remand, before there had been supplemental expert reports, before there had been depositions of the experts on those reports, and at a time when Logmein had just informed us that they had in fact changed their system. We didn't even know precisely what the change was. We thought we had a good idea. But that's why we said at the time that at a minimum there were facts in dispute because there hadn't even been discovery on the existing Logmein system given the fact that the matter had been up on appeal once before, a lot of time had gone by, and apparently a change had been made. However, once we got the expert reports after the motion for summary judgment was denied and we found out exactly what the change was, it became apparent that in fact there were no facts in dispute. But by that time, we were weeks away from trial, and that's why we proceeded to go to trial. What I'd like to do, Your Honors, is to review the three arguments that are made by Logmein to support the jury verdict and show you why in each case they turn not on issues of fact or a dispute, a battle of the experts in Logmein's words, but they turn instead on peculiar and nonstandard meanings that were given to words of claim by the experts. Let me just make sure we're on the same page, which is that if they were to prevail on any one of the three issues with regard to substantial evidence of non-infringement, then you would lose. That's true. So you have to win on all three. However, I think that we win on all three, and let me explain why. The three arguments were, number one, that the servers don't create the communication channels and sessions, that the servers are not linked to the Internet and having a static IP address, and that the servers don't perform all four functions of the location facility. Now, that's actually, it collapses to two arguments because the third of those arguments, that the location facility that they operate doesn't perform all four functions, is really just the create argument phrased in a different way. Their expert admitted that two of the four functions were done by the Logmein servers, and he simply made that third argument by saying, well, but the create communication channels and sessions argument is not done. So in reality, we have only two arguments to deal with, the create argument and the static IP argument. So if I may turn to the static IP argument first. The question is, is the location facility linked to the Internet and having a static IP address? Well, if you turn to page 32 of the red brief, you'll see a picture that supports our point. It's a drawing of the Logmein system, and it actually shows you the static IP addresses of two of the three servers, and it shows them in the cloud. So there's no question, and this is consistent with what their expert testified to. So no question that two of the three servers are in fact linked to the Internet, they're in the cloud, and they have static IP addresses as shown. And that picture also shows you that the third server, the database server, is linked to the other two servers. So the entire location facility is linked together and there are static IP addresses. So how are they even trying to make this argument? Well, what Dr. Bhattacharjee, their expert, said below is that there has to be one static IP address through which all of the computers in their system have a direct connection to the Internet. Now, members of the panel, that is not a limitation of this claim. And that's actually contrary to the opinion of the panel in the first case in Community K-1 that said that in this case, as in virtually every patent case, A means one or more. We showed that there were several static IP addresses, and those addresses were used to link to the Internet. The idea that the linkage has to be through one to all of the different computers just is not in the claim. So what about the second argument? The second argument being the create argument. What happened here is that there was no disagreement about what create means as a plain and ordinary meaning for create. Dr. Bhattacharjee suggested, well, create means bring into existence. We didn't have a problem with that. Dr. Bhattacharjee said he was using that definition when he was doing his analysis, but in fact what he was doing was adding to it. When you get down to it, Dr. Bhattacharjee's real definition for create is bring into existence without using any information from any outside source. Because that's really what his argument is here. He says that, he admits that the, or apparently he didn't argue with Dr. Grimshaw's testimony and explanation that the communication channel between the host and the remote is in fact a data structure that is written by the locator server, by the location facility, and it resides on the locator server. He didn't argue with that. He didn't even talk about the actual functioning of the source code in this particular instance. He said that instead, he didn't think that that was creating the data communication channel because the location facility was using information about the location of the host that it got from the host and location about the remote that it got from the remote. And that simply is not consistent with a plain and ordinary meaning of create. The analogy that we suggest in the blue brief is thinking that the grocery store that sells sugar is somehow creating the cupcake that the chef is making by using that sugar. No, the chef is obtaining the sugar from somewhere else, but there's no doubt that it's the chef that is making the cupcake. Now, not only does that violate the plain sense of the matter, but it also violates what this court said in its first opinion about the use of Dr. Ganger's statements during the re-examination. Because when Dr. Bhattacharjee was asked, well, if you consider all of the servers working together, is it fair to say that they create the communication channel in session? He said no. And when asked why, he said, well, I turn back to something that Dr. Ganger, who was 01's expert during the re-examination process. What Dr. Ganger said, Dr. Ganger said that the location facility itself had to create the communication channel in session, and so that's why I say that there is none here. Well, this court instructed the parties that itself was a misleading, and that's I believe in footnote four from the original opinion, itself was a misleading phrase to use. First of all, Dr. Ganger was found not to have created any prosecution history estoppel in his statement, and that was the specific statement that was the issue in the first appeal. It was not prosecution history estoppel. It was being brought back into this case just by having the expert say that that's what he relied on. It was inappropriate for him to do that. And so, your honors, there really was no dispute of fact in this case. The dispute was simply a matter of how the facts were going to be applied to the claim using definitions of the claim terms that were inappropriate. Now, there's one other point that I want to make about the way Dr. Batticiargi refuted or attempted to refute infringement in this case, and that is, and it doesn't appear much in the briefs, but it was significant actually during the trial. Dr. Batticiargi actually attempted to make the argument that the location facility was, that the Ladmian situation was not a location facility because there were a number of different programs that were functioning together. A lot of time was spent with this jury talking about how many different servers there were and where they were and how many different languages the computer program source code was written in. You don't hear as much about that in the briefs, but that figured prominently at trial. And I wanted to say that to the court only because, again, that was an issue that was supposedly put to rest by this court's first opinion. Was it with respect to programs? I understood the initial opinion to be dealing with different computers, not answering, not addressing the question of whether these were different programs, even though a single program could be spread over multiple computers. Although, Your Honor, I think that the court directly addressed that when it said that, and it said this by looking specifically at the words of the patent, that the location facility could be subdivided into different sub-programs and it could be distributed over different computers. Well, the inherent meaning of that statement... But does that mean that any time different computers are operating in conjunction with one another, each operating entirely separate programs, that that has to be treated as a single program for purposes of the analysis of the locator facility? That issue does not seem to have been addressed by the court. I think it was, respectfully, Your Honor, and I think that that's in fact how software works in the world. In other words, and there was testimony from both of our experts about this when they were addressing how common it is for programs to be subdivided and distributed when we were dealing with the question of whether there was, in fact, support for the claim in the specification. They made it clear that the way any commercial program works, really, is that it is broken up into a lot of different programs and those programs run separately, but they just make calls to each other. They're linked, but the one program will call another when it needs that other program to do something. And I believe that that result was mandated when the court said that, in fact, just as the patent says, the location facility, in this case, can be broken up and subdivided. See, what Dr. Baticiargi did was he was very careful to say that he read location facility to mean a program when this court had said, no, location facility is software that does so-and-so. Software is a plural noun. Software is, the definition of it is, it is a program or a group of programs. And so when Dr. Baticiargi redefined location facility not as software but as a program, it was, again, going against what this court had told the parties not to do. I don't understand. Earlier I heard you to say that his testimony about the plain meaning of create was unacceptable. And, I mean, it looks to me he said create is to bring into existence, period. I don't see where he limited it beyond bring into existence, and that's precisely what you all argued to the PTO ought to be the meaning of create. That is the proper meaning. Dr. Baticiargi said one thing and then he did another. He said that that's what he thought create meant, but then he went on to require something more than just bring into existence, because there's no question that the communication channel and session, they are just a data structure that is clearly written by the location facility and it's written in the memory of the location facility, and there was no contrary testimony on that. So when Dr. Baticiargi started saying, well- Well, you say they're just a data structure, but the claim term, isn't it to create a communication channel or communication session? Yes. So why is it wrong or why isn't there substantial evidence given his testimony that the remote host computers create the connections to the servers? Why isn't that substantial? Because they don't, Your Honor. You can think of it as pipes. If the host has created one pipe going in towards the location facility and the remote has created another pipe going into the location facility, you can't go end to end until you create the third pipe. The claim language says create the communication session and channel between the remote and the host, and that between part is not created until the location facility does its job. Okay. We'll restore you three minutes because you've used all your rebuttal time. Yes. Okay. Thank you, Your Honor. Mr. Fleming. Chief Judge Prost, and may it please the Court. I would take first things first and respond to the principal theme of Mr. Shunk. I think it's important to emphasize that this is not a claim construction appeal. The appellant did not preserve any claim construction argument below. What is before this Court is the question, as Mr. Shunk put it, of whether the claims as the claim as construed reads on Logmian's accused product, and this Court has held time and again, most recently in Versada but also in cases like Tessera and Lazar Kaplan, that that is an issue of fact decided by the jury and reviewed by this Court for substantial evidence. And there most certainly were disputed issues of fact as to the four claim limitations, two of which are related, which we claim there is substantial evidence to support a non-infringement verdict. And Your Honor is correct. We only need one of them to be supported in order to affirm the jury verdict. I would start with the create limitations, because I think fundamentally there is no dispute as to what they require. They require that the communication channel and sessions be created not by the host and remote computers, but by the gateway, in this case the accused gateway server, the location facility in specific. And as to that matter, that was a pure battle of the experts. Our expert, Dr. Bhattacharjee, testified, referring to the source code which was put into evidence during his examination, that the host computer creates a communication channel to the gateway, the remote creates a communication channel to the gateway, and then what the gateway does is it forwards the data back and forth so the two can communicate. It has to be that way because the host computer is behind a firewall. It would be impossible for the gateway to send an incoming communication to the host because the firewall would inhibit it. Instead, what happens, and this is why you need this solution, is that the host sends an outbound TCP connection to the gateway. And Dr. Grimshaw, ZeroOne's expert, agreed with this. On page 12965 of the appendix, he agrees, and he says in his words, that the connection between the host and the gateway server is, quote, initiated by the host computer as an outgoing TCP connection. Now what does ZeroOne rely on on the other side? It relies on really only a paragraph in Dr. Grimshaw's direct testimony, and I think it's worth looking at what Dr. Grimshaw actually says on this. It's on page 12809 of the appendix, and there's basically only a page where he talks about why he thinks that in the LogMeIn system, it's the gateway server rather than the host and remote computers that create the communication channel. And the core testimony is on 12809 beginning at line 9. And he says, the communications channel is the high-level abstraction that moves the bytes back and forth. I could be wrong, but it seems like you're trying to climb a mountain you don't have to climb right now. You just have to show there's substantial evidence for your position, right? I mean, I feel like you're spending a lot of your time refuting why their position is wrong. All I was trying to do, Judge Moore, I certainly take the point, and all I was trying to do was show why the jury was fully entitled to reject Dr. Grimshaw's testimony as unreliable, unsupported, and incredible, and accept Dr. Baticiargi's testimony instead. And I just wanted to direct the court to exactly how sparse and undeveloped Dr. Grimshaw's testimony is, because Mr. Shunk would have you believe that he gave detailed testimony that a jury was required to accept, such that it couldn't possibly have ruled our way. That's all I meant to do. The passage begins at 9, and he says, the reality is it's just some data structures in a C++ program somewhere that hooks all these things together, and it's exactly the same, excuse me, with all other sort of primitives that people think of as being a thing. So that's what's going on here. That's all he says. The jury was fully justified in rejecting that. He doesn't cite any source code. He doesn't refer to any product documentation. He doesn't explain what the data structures are. Mr. Shunk makes much of the fact that our expert didn't specifically say, in hyperbole, Dr. Grimshaw talked about data structures, and that's wrong. There was a reason that he didn't say that, because it wasn't clear what data structures Dr. Grimshaw even relied on. So the jury was perfectly entitled to decide, when faced with this battle of the experts, that our experts' testimony on these CREATE limitations were sufficient. I'd say a word about the Ganger Declaration, because that, I think, is a red herring, but it's a significant part of Mr. Shunk's presentation. Let me just ask you, and this is, I think, essentially Mr. Shunk's point on the first point, is that, yes, the host has established a connection with the gateway, and the remote has established a connection with the gateway, but there is no communication channel until the gateway performs its function. So that is the way that the gateway creates the communication channel, which didn't exist before the gateway came into play, and does after. Why isn't that a fair way of characterizing the CREATE concept? Even your summary, Judge Bryson, and what Mr. Shunk said this morning is far more detailed than Dr. Grimshaw ever gave the jury. And even as articulated in that way, that is their position. That is a factual issue that the jury could decide. What our expert says was, you have half the pipe being built on one side by their host, you have the other half being built by the remote, and there's still a chunk of the pipe which is left unbuilt. That is a factual dispute, Judge Bryson. The jury was entitled to decide. What our expert said was, it's built, and then all the gateway does is it readdresses the information and sends it along back and forth. And that is not creating. That is at most facilitating the communication or allowing the host and remote computers to use the gateway. But it's an essential facilitation. In other words, it's the sine qua non of communication, right? I don't think that that is, that's certainly not a claim construction issue that was put before Judge Hilton. And so under Versada, that issue went to the jury, and the jury was entitled to decide which expert was more reliable and credible and which was supported by the source. But I think even in your version of the facts, it is a sine qua non of communication. The communication will not work without the gateway performing its part, right? The gateway needs to be there for the system to work. But the question is not, is the gateway somehow involved in the communication? Of course it's somehow involved. But the limitation is the channel has to be created by the gateway. And this was, again, I don't think this is disputed, that it's not enough for Zero-One to show that the gateway is used or that it enables or that it facilitates the communication. It has to create the communication channel. It is not enough that the communication that then happens over the channel is facilitated by the gateway. The channel is initially created by the computers on either side, and then the communications itself, even if they are facilitated, and they need to be, because that's why this solution is essential. Just to be clear, does your record evidence actually suggest that the gateway isn't involved at all in creating the communication channel, or is it that it doesn't create it because the host and remote computers participate? I guess I'm trying to figure out, are you viewing it as an all-or-nothing sort of thing? Twenty people are building a bridge. Ten guys start on one side, ten guys start on the other side. There's only one guy that puts the final piece in the middle that makes the bridge now passable. Is he the only one that created it? I'm trying to figure out what your understanding exactly of create is in terms of the record evidence. Our understanding is that this is a plain language term. It went to the jury on its plain language, meaning bring into existence. Who brought the bridge into existence? All 20 people or only the guy that put the last piece? I think in a case where that was the claim term and those were the facts, that is the factual issue that the jury is entitled to decide. Our experts said in that situation, in this situation of this case, not the hypothetical, the channel is created by the two computers on either side. So what you're saying is... I'm sorry. Just one more thing on my analogy. I'm almost afraid that your argument, your expert's argument to the jury was that the people who created it are the nine people on one side, the ten people on the other, but don't include the one guy who put the last piece in the middle that brought it together. He certainly didn't suggest that. Because that's the gateway. So was the gateway involved in creating the channel or not? The gateway is certainly involved in the communication. And even if the gateway is somehow involved in the sense that that's where the two pipes meet, whether that meets the limitation of the claim is a factual issue for the jury to decide. And it was entitled to accept Dr. Bhattacharjee's testimony that as construed and as written, the claim is not satisfied by Logmean's system. And that's the holding of Versada. It's the holding of Tessera, that once you have a construed claim that goes to the jury and there is no, I mean, what your Honor is teeing up, that could have been a claim construction argument potentially. If Zero-One had raised that as a claim construction argument, we might be having a different... Well, I'm not sure it's not an infringement argument as a matter of law that could be decided. I mean, there was no bridge that was passable until that last piece was put in. People would have fallen through into the water. So doesn't that last piece participate in creating the channel? Even if it enables the communication or it is used by the two computers in making the communication, it would not be creating the channel. But again, that is a battle of the experts. So we're discussing this now on a cold record. The jury heard both experts argue about this. Both experts were cross-examined. And Zero-One left this not to a claim construction issue but to the affirmative evidence of Dr. Grimshaw, which is extremely limited. I read it to the court. And trying to cross-examine Dr. Bhattacharjee on this point, who relied on the source code and put it into evidence. And we would submit that that is plenty in order to affirm the jury's right to pick one expert over the other in determining whether these limitations were met. I'm happy to address the other limitations if the court wishes, but I think, quite honestly, that one is sufficient to affirm the jury verdict. There were some points that were made with respect to the new trial arguments, and particularly with respect to the Ganger Declaration, which I'd want to make sure to address, which is Mr. Shunk is contending somehow that the Ganger Declaration is off-limits entirely on remand, and that it was not something that either Dr. Bhattacharjee or counsel was entitled to refer to. There's certainly nothing in the court's prior opinion that suggests that. And if Zero-One actually thought that were the case, then it should have objected to the declaration when it was put into evidence. Instead, Mr. Shunk said no objection. It should have objected to Dr. Bhattacharjee's testimony on this front. It never did. The testimony went in without objection. And it should have told its witnesses not to accept it as a matter of substance. But every technical witness who testified to Zero-One, Mr. Chung, the inventor, Dr. Grimshaw, the expert, and Dr. Ganger, who testified himself on this stand, agreed that just as Dr. Ganger says in the declaration, it is the location facility that has to create the communication channel in order for there to be infringement. If the host and the remote computers do it, then there is no infringement. Do you agree with Mr. Shunk, and I want to be careful not to put words in his mouth, and I may not succeed, but do you agree with him in his response to my line of questioning about the original decision in O-1 communique that it not only covered the issue of multiple computers, but also covered the question of multiple programs, or as he put it, sub-programs, within the entire system? I do not agree with his answer, Justice Breyer. Why don't you flesh that out? Yeah, no, I thank you for raising the question. I think that's quite important. If one listens to the oral argument in the first appeal, around minute 10, Judge Fogle, who wound up writing the opinion, focuses on this issue, and he asks Mr. Shunk, did Judge Hilton in his summary judgment decision address this? And Mr. Shunk very clearly says, I'm not sure Judge Hilton ever got to considering that. One can read the entire opinion in vain for any reference to the issue that Your Honor raises about programs. That is something that was, again, open on remand. If Mr. Shunk truly thought that an argument that our expert was making was contrary to this court's opinion, then that would have been an appropriate opportunity for a Daubert motion, or at the very least, an objection. Neither was made. This evidence and testimony went into the jury, it was presented to the jury, and O-1 relied, didn't try to exclude it, didn't try to object to it. Instead, it cross-examined based on this, and Mr. Shunk's closing included a mention of this. This was an issue, again, as in Versada, it went to the jury for decision as a matter of fact. Do you think it's artificial to try to characterize a set of programs that are working together as separate programs as opposed to sub-parts of a single program? I don't think that's artificial at all, and at the very least, the jury was entitled to rule that based on the evidence in this case. How would you draw the line between those two categories? I mean, the evidence that we put in was that when you have different programs, two of them are off-the-shelf Microsoft programs in different languages. One is proprietary software developed by LogMeIn. They don't talk to each other, they can run independently. You can have one running and not the other two. And by contrast, what you have in the patent is a claimed location facility that performs all four functions. Now, you can have a single program distributed over multiple computers, Windows NT, or a banking program that's distributed over multiple ATMs. That's not what happens here. We don't have one program distributed in many areas. You have three programs operating independently. And the fact that he thinks he can add them all up and get all four functions, although he can't, because it's very, very clear that even if you combine all of the software on the three servers in LogMeIn's system together, they don't create the communication channel and they don't create the communication session. But even if you could do that, we'd submit that then you're not talking about, at the very least, the jury was entitled to find that we weren't talking about a location facility. Could I ask you one final question? There's a point at the end of the trial in which requests for instructions are made and objections are made. There's a request for instruction on the A means one or more issue. It concludes with a statement, I think, by Mr. Chunk, that yes, Your Honor, which is a polite way of saying I recognize you've ruled, not I acquiesce. So I didn't find your argument in that respect to be convincing where you say, well, he accepted the court's decision. But you make the further argument that there was no actual objection to the failure to include that instruction. Was there any point at which Judge Hilton said that the failure to object would be forgiven if there was a request for instruction which was turned down? Many judges do that, of course, in order to avoid the somewhat silly exercise, at least some would say silly exercise, of going through the 51C objections that can go on and on. Did that happen here? That did not, Your Honor. In fact, on the contrary, Judge Hilton made a specific Rule 51 instruction on 14388 after the charge was given. He says now, other than what we've already dealt with, is there any objection to the instructions I gave or the manner in which I gave them? And Mr. Shunk then says, Your Honor, I have two, one which has already been raised. He reasserts his objection regarding the damages instruction and then he asserts and he says, our proposed instruction number 16 said exactly that. Right, I saw that and what troubled me was the other than what we've already dealt with, which seemed to suggest that he was accepting that such objections or such proposed instructions that had previously been raised would be preserved. Your Honor, I'm perfectly happy to submit to that. Even if Your Honor believes that it was sufficiently preserved, the objection is meritless. Because the jury charge as a whole was not rendered erroneous simply because instead of saying generically A means one or more, Judge Hilton decided to provide the jury twice with this court's claim construction of location facility verbatim and then said, as 01 requested, that all other terms should be given their plain and ordinary meaning. There was no objection made to that charge in general and that is correct. Nothing prevented 01 from arguing to the jury that A means one or more. In fact, they did make that argument in some circumstances without any objection from us. So even if the court believes that it was preserved, we have no problem with that because ultimately there was no abuse of discretion in how Judge Hilton charged the jury. I haven't had a chance to talk about our cross-appeal. I'm happy to take any questions on that with regard to enablement. I think we're probably satisfied for you to rest on the briefs there. We're well over your time. Well, indeed. Thank you very much, Your Honor. Mr. Schunk, you're left arguing the main appeal. Thank you. Very briefly, Your Honors, I want to direct the court's attention to the joint appendix at 13960, lines 3 through 8. This is where Dr. Baticargi was cross-examined about the issues that were raised, I believe, by the panel in several different questions to Mr. Fleming about his peculiar and non-standard definition of the word computer program. The question, now you would agree that the definition of software that you're using in this case is narrower than its ordinary meaning. Keep in mind that the first panel said location facility is software, so what you mean by software is important in this case. He was asked, wouldn't you agree that your definition is narrower than the ordinary meaning? He said, it is narrow explicitly because of what the patent says and what the inventors said to the patent office, referring to Dr. Ganger inappropriately. Question, so it is narrower than the ordinary meaning, right? Answer, correct. Dr. Baticargi himself admitted that when he was talking about computer programs, he was not using the standard understanding of a person of ordinary skill in the art. He was using his own narrowed construction, which he based on a prosecution history estoppel argument that this court said should not be relied on as prosecution history estoppel. Secondly, there was mention made again to attempt to suggest that Dr. Grimshaw gave shallow or sketchy testimony. In fact, it's not just his testimony at Joint Appendix 12-809. The testimony begins the page before 12-808 and goes to 8-09. And if you examine that testimony again, you'll see that Dr. Grimshaw actually talks about the specific mechanism that is created. In other words, rather than talking about analogies, pipes and so forth, he talked about the specific activity in the source code. And he made it clear that the specific activity of creating a communication channel is the writing of a data structure. And he explained that that is done only by the location facility in the log me in server. That was the only testimony in this case about the real nuts and bolts of the log me in system. Dr. Bhattacharjee did not respond. He was silent. And if counsel's explanation now is, well, he didn't think it was important enough to respond to, I think that's a bit disingenuous. Finally, as to the question of the fact that, well, we were able, in closing argument, to argue that A means one or more, if Judge Hilton had actually given that charge to the jury, it would have had the force of law behind the argument. We shouldn't have been required to argue A means one or more to the jury just as one lawyer saying, well, that's what I think it means. Judge Hilton should have told the jury what this court told him was the case, that A does mean one or more in the patent context. And it was improper for him to not give that charge. But did you object to his failure? We absolutely did. And in fact, if you look. We've read the sections in the brief. Right. I don't see a 51C objection. Once you propose the language that you wanted, the judge said, I'm not going to give it. And there wasn't any objection after that that I could see. Well, no. The judge said he wasn't going to give that. Right. And this was at the jury charge conference after the evidence was in. Of course. And then, as Your Honor pointed out, he said, well, other than what we've talked about before, is there anything more? Well, I viewed that as something we had talked about before. And you viewed that as excusing you from the need to make a 51C objection. Yes.  Thank you, Your Honor. Thank you. We thank both counsels cases submitted.